THE STATE BANK BUILDING COMPANY v. JOHN PIERCE, Appellant.

Unpaid Stock Subscription: ASSESSMENT: WAIVER.　Certain necessary outlays could be met, only, by getting stock subscriptions. A member of the corporation wrote the president, "When you need money, levy the assessments," and then there is no necessity for the directors to meet.　He knew that debts were being made in reliance upon an assessment made by the president, alone.　*Held*, payment can not be resisted by urging that the articles of incorporation require that such assessment shall be made by the directors.

SAME.　Unpaid subscription constitutes a trust fund for corporate creditors, hence a subscriber and promoter can not resist payment with defects in the organization of the corporation.

Practice.　Overruling a demurrer is without prejudice where every law question raised is, later, fully presented to the court trying the case without a jury.

*Appeal from Woodbury District Court.*—HON. A. VAN WAGENEN, Judge.

SATURDAY, DECEMBER 15, 1894.

THE plaintiff is acting as a corporation. This is an action at law to recover a balance claimed to be due from the defendant upon a subscription of ten thousand dollars to the capital stock of the said corporation. There was a trial before the court without a jury, and a judgment was rendered for the plaintiff. Defendant appeals.—*Affirmed.*

*Strong & Owen* for appellant.

*M. J. Sweeley* and *Lewis & Holmes* for appellee.

ROTHROCK, J.—I. The original petition in the case was filed on the thirteenth day of October, 1891. It was attacked by a motion to strike parts of the petition, and to compel the plaintiff to make the pleading more specific. The motion was sustained in part, and the plaintiff amended the petition. The defendant then demurred to the petition as amended, and the plaintiff again amended its petition, and the defendant amended his demurrer. Thereupon the plaintiff filed the third amendment to its petition, and the defendant filed an amended and substituted demurrer to the petition upon some seventeen grounds. The demurrer was submitted to the court and overruled. The order overruling the demurrer was qualified by the statement that the ruling was "without prejudice to raising the same questions on introduction of testimony." The defendant excepted to this qualification of the ruling. He did not stand on the exception, but filed an answer in which all the questions raised by the demurrer were presented. Thereupon the plaintiff filed a reply, and the case was finally

brought to trial. The ruling of the court on the demurrer is complained of by the defendant. It was clearly without prejudice. Every question of law and fact relied upon by the defendant was fully presented upon the trial.

II. It would be an almost endless undertaking to set out all the pleadings and amendments thereto, and it is wholly unnecessary to do so. A statement of the facts relied upon by the parties will be sufficient to determine every material question in the case, and it is proper to state in the outset that the record abounds in immaterial matter not necessary to be considered. Counsel will understand that in our consideration of the case we treat of only what we regard are the material questions. It appears that on the first day of October, 1889, the defendant and some ten other persons entered into a written contract, by which they agreed to organize a corporation to be known as the "State Bank Building Company." The defendant signed said contract, and set opposite his signature the words, "one hundred shares." Afterward, and on the ninth day of November following, articles of incorporation were adopted and acknowledged by the parties, of which the following is a part: "The capital stock of this company shall be five hundred thousand dollars ($500,000), which shall consist of five thousand shares of one hundred dollars ($100) each, and at least one hundred thousand dollars ($100,000) of the capital shall be subscribed, and ten per cent of the same shall be paid in before the commencement of business, *and the remainder of the subscription shall be paid from time to time as assessments shall be made by the board of directors*, and the remainder of the stock shall be issued and disposed of as the board of directors may determine, and all of the shares of stock when fully paid shall be nonassessable." The defendant was one of the promoters of the corporation, and

also an incorporator.   He paid in ten per cent of his
stock subscription at the commencement of the enter-
prise, and afterward paid two other installments,
amounting in all to fifty per cent of his subscription.

This action was brought to compel him to pay
other assessments, which, if paid, would be in full of
his subscription to the capital stock.  The principal ques-
tion made by the defense is that the assessments were
not legally made.   It appears that James F. Toy was
president of the corporation, and that he made the
assessments alone, and without the action of the board
of directors, as required by the articles of incorpora-
tion.   It is strenuously contended in behalf of appellant
that the assessments were absolutely void, because not
made by the board of directors, and numerous cases
are cited which it is claimed announce that doctrine.
We do not find it necessary to determine this question,
because, in our opinion, evidence in the case author-
ized a finding by the district court that the defendant
waived that requirement.   We do not understand coun-
sel to claim that this provision of the charter could not
be waived by the defendant.   The contention is that
whatever evidence there was in reference to a waiver
related to the assessments which have been paid.

The evidence of waiver relied on by plaintiff
consisted of certain letters and other facts and
circumstances.   The president of the corporation ad-
dressed a letter to the defendant in these words:
"*John Pierce, Esq., Sioux City, Iowa.*

"DEAR SIR:—The 10 per cent assessment that was
made on the stock of the State Bank Building Com-
pany is now about exhausted, and there are bills out-
standing that will soon have to be paid, and I think it
would be well for us to make an assessment of about
twenty per cent, to be paid by the fifteenth inst., and
another of about the same amount on the fifteenth of
July.   If you think best to call a meeting so as to bring

this before the directors, we will do it, or, if you prefer, subscriptions can be made to the stock without the formality of a meeting. I shall be pleased to have you inform me of your preference. Truly yours."

The answer of defendant was as follows:

"SIOUX CITY, IOWA, June 16, 1890.

"*Mr. James F. Toy, Treas., Storm Lake, Iowa.*

"DEAR SIR:—Yours of June 5th at hand, and in reply will say I see no necessity for calling a meeting of the directors. When you need money levy the assessments. It will be a little hard for me to pay in $4,000 between now and the middle of July, and Mr. Desparois has kindly consented to take care of me until matters can take a turn. I am, yours very truly,

"JOHN PIERCE."

This is not only a waiver, but it is an absolute direction to Toy to make the assessments. It appears from another letter written by Toy to the defendant that he (Toy) urged payment of the assessments, and stated that money was absolutely required to pay bills for the construction of the building. And there is other evidence in the case to the effect that the payment of the whole of the capital stock was absolutely necessary to pay the debts of the corporation, and that it had no resources except the stock subscriptions. It is urged that the direction to Toy to make the assessments had no reference to these later calls, but only authorized those which have been paid. We think that there is evidence in the case from which it could fairly be found that the defendant intended his direction to apply to any and all future assessments.

It appears in evidence that several months after the assessments in suit were made a full statement of the amount due from defendant was presented to him, and that he made no objection thereto, and promised to make payment in full, and made no claim that the assessment should have been made by the board of

directors.   There are other facts and circumstances
tending to show that there was a complete waiver by
defendant of a strict compliance with the laws of the
corporation in the matter of making these assessments.
We have stated enough to show that it was a fair ques-
tion for the court to determine whether the defendant's
acts and conduct, in connection with the fact that he
knew that debts were contracted in reliance upon the
assessment, which could be paid in no other way than
by the collection of the stock subscriptions, were such
as to estop him from now raising the technical objec-
tion that his assessments were not made by the proper
authority.   He made no claim that premature assess-
ments were made, or that the same were unnecessary.
On the contrary, it appears without conflict in the evi-
dence that the whole amount of the stock subscriptions
was absolutely necessary to pay the creditors of the
corporation.

II.   There is one other question which we will
briefly consider.   It appears that the corporation was
organized November 12, 1889.   It is required by sec-
tion 1060 of the Code that the articles of incorporation
shall be recorded in the office of the secretary of
state.   The incorporators neglected to have such
record made until August 12, 1891.   It is claimed
that the defendant is not liable on his subscription to
the capital stock by reason of this neglect.   We think
it is quite plain that, as he was one of the incorpora-
tors, he is in no position to urge this neglect as a
defense to an action by the corporation to recover the
amount of his stock subscription.   The payment of all
the stock is necessary to pay the claims of creditors.
Unpaid subscriptions to the capital stock of a corpor-
ation constitute a trust fund for the benefit of its credit-
ors.   *Osgood & Moss v. King*, 42 Iowa, 478.   Now, it is
perfectly manifest that a corporator and stockholder

can not be allowed to set up defects in the organization of the corporation as a defense against the payment of his stock, and thus defeat the claims of creditors of the corporation. The corporation, in such case, bears the relation of a trustee for the benefit of those who have extended credit to it. When a number of persons are associated together under color of lawful authority, acting as a corporation, though there are legal defects in the organization of the corporation, a subscriber to the corporate stock, who is also a promoter of the corporation, can not set up such legal defects in defense to an action by the corporation to recover his subscription to the capital stock. *Economizer Co. v. Denslow*, 48 N. W. Rep. (Minn.) 771; *Chubb v. Upton*, 95 U. S. 667; *Episcopal Church v. Pickett*, 19 N. Y. 482; *Railroad Company v. Carey*, 26 N. Y. 75; Cook, Stock & Stockholders, section 184. Further consideration of the case appears to be unnecessary. We discover no grounds for reversal, and the judgment is AFFIRMED.